[No. 15396.   Department One.   January 7, 1920.]

## MARDEN, ORTH & HASTINGS CORPORATION, *Respondent,* v. TRANS-PACIFIC CORPORATION, *Appellant.*[1]

SALES (153)—BREACH OF CONTRACT—EVIDENCE—SUFFICIENCY. A contract made in November for the sale of soya bean oil for immediate shipment from the Orient was finally breached February 19th following, where upon offer and negotiations for extending the time for delivery, the buyer fixed that time as the limit within which time for delivery could be arranged; failure to reply thereto constituting refusal to deliver as of that date.

SALES (155)—REMEDIES OF BUYER—DAMAGES—PURCHASE OF GOODS ELSEWHERE. Upon refusal of the vendor to deliver soya bean oil "c. i. f. Seattle," the buyer is entitled to recover the difference between the contract price and the market price at Seattle at the time of the breach.

SALES (152)—REMEDIES OF BUYER—ACTION FOR BREACH—EVIDENCE —ADMISSIBILITY. In a buyer's action for damages for failure to deliver soya bean oil to be shipped from the Orient, the market value on the day of the breach may be shown by a trade journal of repute and general circulation throughout the United States, generally relied upon by the trade everywhere, in which quotations were given and sales reported at the place of delivery, which was the principal Pacific Coast point for the importation and distribution of soya bean oil.

COSTS (62)—ON APPEAL—MORE FAVORABLE JUDGMENT. Appellant, -obtaining a substantial reduction in the judgment, is entitled to costs on appeal.

Appeal from a judgment of the superior court for King county, Allen, J., entered March 15, 1919, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Modified.

*Trefethen & Findley,* for appellant.

*Donworth, Todd & Higgins,* for respondent.

PARKER, J.—The plaintiff, Marden, Orth & Hastings Corporation, commenced this action in the superior

[1] Reported in 186 Pac. 884.

court for King county, seeking recovery of damages which it claims to have suffered from the failure of the defendant, Trans-Pacific Corporation, to deliver four hundred tons of Manchurian pressed soya bean oil, in accordance with a contract for the sale thereof entered into between them. Trial in the superior court for King county, sitting without a jury, resulted in findings and judgment in favor of the plaintiff, awarding it recovery in the sum of $15,680, from which the defendant has appealed to this court.

The trial court found that the contract was breached on April 11, 1918, upon the theory that the time for delivery thereof had been extended by mutual consent until that time, and its delivery then finally refused by appellant, and that, at that time, soya bean oil was worth in the market one and three-fourths cents per pound more than the contract price, and measured respondent's recovery accordingly.

In view of the contentions here made, it becomes first necessary to determine whether or not the trial court was correct in concluding that the breach of the contract occurred on April 11, 1918, or prior to that time, when the difference between the market price and the contract price was less. On November 13, 1917, a written contract was entered into between the parties by the terms of which appellant sold and agreed to deliver to respondent four hundred long tons, 2,240 pounds each, of Manchurian pressed soya bean oil at $14.25 per hundred pounds, to be shipped immediately from the Orient and delivered ''c. i. f.'' (cost, insurance and freight paid) at Seattle. This contract purchase price, it will be noticed, was fourteen and one-fourth cents per pound. Had the oil been shipped from the Orient as originally agreed, it would have, in due course, arrived in Seattle in about four weeks. The contract was made through Horace J.

Holley & Co., brokers. The oil was to be paid for upon its arrival in Seattle.

There is nothing in the written contract indicating that respondent was to furnish appellant any letter of credit to aid appellant in procuring the oil in the Orient, but shortly after the making of the contract, probably within two or three days, at the request of appellant, respondent did procure for appellant a letter of credit in the sum of $130,000, issued by the Equitable Trust Company of New York. This, we think the evidence shows, was done merely as a matter of accommodation on the part of respondent to aid appellant in procuring and shipping the oil from the Orient, and to thereby aid it in hastening delivery. When the letter of credit arrived in Seattle, there was a mistake in its reference to the shipment of the oil, referring to the shipment as "f. o. b." Seattle, when it ought to have been "c. i. f." Seattle. This error, however, was caused to be corrected by respondent within two or three days, at the request of appellant, all of which caused some delay in the furnishing of the letter of credit as requested, which, it is claimed by appellant, furnished an excuse for its failure to deliver the oil as contracted for. This, however, we think, will, as we proceed, appear to be of no consequence, in view of the extension of time mutually agreed upon by the parties for the delivery of the oil. On December 14, 1917, respondent, desirous of being advised as to how soon the oil would arrive, wrote appellant as follows:

"Gentlemen: Under date of November 13th, we closed with you contract for four hundred tons pressed soya bean oil, immediate shipment from the Orient, through Horace J. Holley & Company. Please advise us promptly on what steamer this shipment is coming forward."

This letter was replied to by the appellant on the following day, as follows:

"Gentlemen: Your favor of the 14th. Beg to state that at the present time we cannot give you any information as regards soya bean oil. We will advise you as soon as possible."

On December 17th, respondent wrote appellant, as follows:

"Gentlemen: We beg to acknowledge receipt of your letter dated Dec. 15th in regard to our contract with you for four hundred tons of soya bean oil, immediate shipment from the Orient.

"We understand from Horace J. Holley and Company, that there is a possibility of your not being able to deliver the oil on time, and we take this opportunity to say that we will hold you fully responsible for any damages we may sustain through late delivery of this contract.

"In case that you are in a position to tell us how long this shipment will be delayed or just what the situation is regarding this deal, we assure you that we shall only be too glad to help you to extend the time of delivery for a limited period."

On December 18th, appellant wrote respondent, as follows:

"Gentlemen: Replying to your favor of the 17th, beg to state that we are taking this matter of oil up, and hope to be able to deliver promptly. Nevertheless we feel that our obligations were vitiated when your company failed to make prompt delivery of letter of credit, and when they did do so, sent it incorrect. These delays made it almost impossible for us to fix our obligations on the other side in time to hold the oil at quotations made. Therefore, while we do not expect to sidestep any obligations which belong to us, nevertheless, we feel that the delays which your people caused us will relieve us from any absolute obligations in this matter. There should have been no error in the letters of credit as our offer was plainly

stated, and the letter of credit as it now stands is incorrect, through no error of our part. However we shall advise you fully within a few days."

On December 22, respondent wrote appellant, as follows:

"Gentlemen: We still have for reply your letter of December 18th referring to our contract with you for four hundred tons soya bean oil dated November 13th, for immediate shipment from the Orient.

"If you will look over the contract, which you duly signed, you will find that it was closed at that time under the basis of sight draft and nothing whatever was mentioned about a letter of credit. Considerably later you requested us to open up a letter of credit against this shipment, which we did.

"On receipt of the letter of credit it developed that some mistake had been made in New York and we requested our friends by telegram to correct this mistake.

"In your above mentioned letter you say that the error in the letter of credit still stands and we will thank you for giving us full information just what change in the letter of credit you require. You should have attended to this matter before this, as we telegraphed to our friends in New York on date of Nov. 29. After looking up our purchase contract, of which you have a copy, you will find that the matter of a letter of credit for this shipment has no bearing on the deal at all.

"We are awaiting to hear from you during the next week how soon you expect to make delivery of this oil."

On January 15, 1918, appellant's representative, who signed the contract for it, sailed for the Orient on business for the company, and a day or so before sailing had a conversation with respondent's representative in Seattle, from which we think it is plain they arrived at an understanding that the time for the delivery of the oil in Seattle should be further

extended, though no definite time was agreed upon. On January 30, respondent wrote appellant, as follows: 

"Gentlemen: We beg to refer you to our purchase from you of 400 tons pressed soya bean oil, November shipment from the Orient.

"We understood from Mr. Barry, who called on us before sailing for the Orient, that this shipment had been delayed on account of failure of your seller to make delivery as contracted for.

"We told Mr. Barry that we should be very glad to assist you in the matter, and extend time of shipment until early February, and are awaiting to hear from him by cable how soon we can expect shipment.

"We are making a reservation however in this if we cannot hold our own buyers off any longer, we shall be obliged to purchase against you in the open market, and hold you fully responsible for any loss we may sustain in connection with this shipment, as per our letter to you of January 7th."

On January 31, appellant wrote respondent, as follows:

"Gentlemen: Your letter of January 30th has been forwarded to Mr. Barry, who is in Yokohama, and we are expecting a cable from him regarding soya bean oil before many days. We hope that you can wait until this cable reaches us."

On Saturday, February 16, respondent wrote appellant, as follows:

"Gentlemen: Unless we have some definite advice from you when shipment of 400 tons soya bean oil, against our contract with you dated November 13th, will be made, by Tuesday next week, we shall buy this quantity against you in the open market and charge you with the difference."

The Tuesday fixed in this letter as the limit of time within which respondent would wait for advice from appellant would be February 19. This was followed

by other letters from respondent to appellant on March 21, April 4, and April 5, demanding delivery of the oil or damage for failure in delivering it. However, appellant did not write respondent again until April 11, when it did so, declining to accede to respondent's demands. These letters were all written at Seattle, where both concerns had places of business. In addition to these letters, some conversation was had from time to time between the representatives of the respective parties. These conversations, however, do not, we think, show any different attitude of each towards the other relative to the delivery of the oil than is found in these quoted letters, and in the conversation had between the representative of respondent and Mr. Barry, as representative of appellant, just before he sailed for the Orient on January 15th. We agree with the trial court in its finding that there had been an extension of time for the delivery of the oil, except as to the period of such extension. It seems to us that respondent's letter of February 16, above quoted, fixing the following Tuesday, February 19, as the limit of time within which further advice would be awaited from appellant, amounted to a final refusal of respondent to extend the time for delivery. beyond that date, if appellant should not then be heard from; and that the silence of appellant thereafter upon the questions of a further extension of time of delivery amounted to a refusal to deliver the oil as of February 19. We are therefore of the opinion that the contract was finally breached on February 19, 1918. Our further inquiry then is, what was the market value of the oil in Seattle on that date.

The evidence introduced of the market value of soya bean oil at Seattle consisted almost wholly of market quotations found in a trade periodical known as "Oil, Paint and Drug Reporter," published on Monday of

each week in New York City, and circulated generally throughout the United States. The weekly numbers of this, published on Mondays from January 7, to April 29, 1918, inclusive, are in evidence. This is a well known and reliable trade journal and contains weekly market quotations of oils of all character, including soya bean oil, at both Eastern and Pacific Coast points, the evidence showing beyond dispute that Seattle is the principal Pacific Coast point for the importation and distribution of such oil from the Orient. The evidence also shows, without dispute, that quotations of the market price of this and other oils found in this periodical are generally relied upon by the trade everywhere in the United States. In the issue of February 18, 1918, sale of several car loads of soya bean oil "at 16¼ cents per pound f. o. b. Pacific Coast," are reported. This, the evidence plainly shows, means at Seattle, the principal Pacific Coast point for the importing and distribution of soya bean oil. The evidence also plainly shows that such oil c. i. f. is one-half cent a pound less than f. o. b. at Seattle, so the conclusion seems to follow that the market value of the oil c. i. f. at Seattle on February 18 was fifteen and three-fourths cents per pound. This may have been the market a day or two before February 18, the date of the issuance of the number, but it is the nearest in point of time to February 19 of any market quotation we have in the evidence, and we have no other evidence before us of the market value of soya bean oil. We note that, in the issue of February 25, the quoted market price remained unchanged at Seattle. We are led to the conclusion that the trial court fell into error in measuring respondent's damage by computing the same upon the basis of one and three-fourths cents per pound, the difference between the contract price of fourteen and one-fourth cents per pound and the mar-

ket price of sixteen cents per pound on April 11, 1918, and that respondent should be awarded recovery upon the basis of one and one-half cents per pound, the difference between the contract price of fourteen and one-fourth cents per pound and the market price of fifteen and three-fourths cents per pound on February 19, 1918; that is, respondent is entitled to recover $13,-440 instead of $15,680.

Contention is made in appellant's behalf that the several issues of the Oil, Paint & Drug Reporter were not admissible in evidence. We think this contention is untenable in view of the fact that it is, as the evidence plainly shows, a trade journal of repute, and its quotations of market prices of oils, including soya bean oil, are accepted by the trade generally throughout the United States as reliable and trustworthy. The general rule as to the admissibility of such evidence to show market value of a standard commodity of merchandise is well stated in 10 R. C. L. 1167, as follows:

"It is a rule recognized generally that market reports or quotations as contained in newspapers, trade journals, trade circulars, price lists, etc., are competent evidence of the state of the market. Indeed, such reports, based as they are upon a general survey of the whole market, and constantly received and acted upon by dealers, are far more satisfactory and reliable than individual entries or individual sales or inquiries; and courts would justly be the subject of ridicule if they should deliberately shut their eyes to the sources of information which the rest of the world relies upon, and demand evidence of a less certain and satisfactory character. Such evidence is within an exception to the general rule barring the admission of hearsay evidence inasmuch as it comes from a public authentic source which is deemed to give it reliability."

This court recognizes this to be the law in *Peters v. McPhadden,* 75 Wash. 525, 135 Pac. 26, Ann. Cas. 1915C

63, though the question there presented was not this exact question. See note in 16 L. R. A. (N. S.) 758.

We conclude that the judgment must be modified in conformity with the views herein expressed. The cause is remanded to the superior court with directions to correct its judgment so as to award respondent recovery in the sum of $13,440 only, instead of $15,680.

Appellant will recover its costs incurred upon this appeal, in view of the fact that it is here obtaining a substantial reduction in the judgment rendered against it in the superior court.

Holcomb, C. J., Mackintosh, Mitchell, and Main, JJ., concur.