[No. 17190.   Department Two.   June 12, 1922.]

## MEYER BROTHERS DRUG COMPANY, *Respondent*, v. I. P. CALLISON, *doing business as the Chehalis Produce Company, Appellant.*[1]

SALES (77)—DELIVERY—TIME FOR COMPLIANCE.   An accepted order for a carload of cascara bark for "prompt shipment" means that the shipper would deliver as promptly as possible, all things considered; and the clause usually being for the benefit of the buyer, the seller is not warranted in cancelling the order because of a war embargo, requiring a shipping license, causing considerable delay in the shipping.

SAME (152)—REMEDIES OF BUYER—ACTION FOR BREACH—EVIDENCE —ADMISSIBILITY.   In a buyer's action for damages for failure to deliver a car of cascara bark for shipment east, an advance in the market price between the day of sale and the breach may be shown by a trade journal of repute and general circulation, relied upon by the trade everywhere, in which New York quotations were given for the time in question, notwithstanding it was purchased on the Pacific Coast; since it was sold to be delivered east and the eastern market would govern the measure of damages.

SAME (153, 156) — DAMAGES — FAILURE TO DELIVER—EVIDENCE— SUFFICIENCY.   Upon an issue as to the damages for failure to deliver a car of cascara bark after an advance in the market price, a finding that an average car contained 31,000 pounds, is not sustained, where the complaint alleged that an average car contained 26,000 pounds and plaintiff's evidence showed that other cars had approximated less than 24,000 to 26,000 and only one as high as 31,000.

Appeal from a judgment of the superior court for Grays Harbor county, Abel, J., entered October 1, 1921, upon findings in favor of the plaintiff, in an action on contract, tried to the court.   Modified.

*John C. Hogan,* for appellant.

*Theodore B. Bruener,* for respondent.

HOLCOMB, J.—This action is one for breach· of contract for failure to deliver a car of cascara bark.

[1]Reported in 207 Pac. 670.

On July 3, 1918, after preliminary negotiations, appellant accepted respondent's order for a carload of cascara bark for prompt shipment. The price stipulated was twelve cents per pound, f. o. b. shipping point, which was Aberdeen, Washington. On June 29, 1918, appellant had given respondent an option, which would expire July 3, 1918, to purchase the two cars of cascara bark, at twelve cents per pound. On July 2, respondent exercised its option to purchase one car, and placed its order with appellant for it. On July 3, respondent exercised its option to purchase the second car, which is the car in controversy now, and appellant accepted respondent's order. All negotiations, including the placing of the order and its acceptance, were carried on by telegraph and letter. Appellant was instructed by wire to await shipping instructions. On July 8, without waiting for shipping instructions, appellant shipped the first car of bark, and on July 11, eight days after the acceptance of the order, cancelled the order for the second car. At the time of the cancellation of the contract, the price of cascara bark had materially advanced.

At the time the contract was made, embargoes were in effect in certain parts of the United States, due to congestion brought about by war conditions, and permits or licenses were required to be obtained before shipments in carload lots could be forwarded to many eastern points. The drug company proceeded with due diligence to obtain the necessary shipping licenses, which were, in due course, forwarded to appellant.

The case was tried before the court without a jury, and the court, after seeing and hearing the witnesses, found all the material facts in favor of respondent, and granted judgment in its favor in the sum of $852.50.

The first claim of error made by appellant is that the court erred in holding that there was a breach of contract by appellant. This was largely a question of fact. A reading of the telegrams and letters, however, convinces us that the trial court rightly decided that question. Appellant claims that, when he offered the carload of bark for "prompt shipment" to respondent in St. Louis, he was not contemplating that the bark was to be shipped to Atlantic Seaboard points, where embargoes existed against shipments owing to congested conditions brought about by the war, causing considerable delay in shipments, and that, when he found that they were re-consigning the cars to such points and that shipping licenses were required, he was justified in cancelling the order for the second car.

We do not so consider. The term "prompt shipment," as used in his offer, meant no more than that the seller would deliver as promptly as possible, all things considered. 24 Am. & Eng. Ency. Law (2d ed.), 1074; *Victor Safe & Lock Co. v. O'Neil,* 48 Wash. 176, 93 Pac. 214; *Hoffman v. Tribune Pub. Co.,* 65 Wash. 467, 118 Pac. 306. It is usually understood to be more for the benefit of the buyer.

At the time the contract was drawn, appellant was bound to consider the conditions of commerce and of transportation throughout the country; and knew that respondent was a jobber, purchasing such commodities as appellant had for sale and re-selling for the market. There was no assurance, even had the bark been contracted to be delivered in St. Louis, Missouri, that an embargo might not be placed upon such shipment, so that the same regulations would have been necessary as were necessary for shipments to New York, and the use of the term "prompt shipment" could not avoid the regulations of the Federal government concerning

such shipments. We therefore agree with the trial court that appellant himself wrongfully breached the contract by cancelling the order for the second car.

The next claim of error is that the court erred in holding that there was any rise in the market price of cascara bark between July 3, and July 11, 1918, and that there was any evidence of the market value of cascara bark in New York except for old or cured cascara bark.

Objection is also made to the reception in evidence of copies of the Oil, Paint and Drug Reporter, of July 8, July 15, July 22, and July 29, 1918.

The evidence shows that Oil, Paint and Drug Reporter is a well known and reliable trade journal of general circulation, and its quotations of market prices are accepted by the trade generally throughout the United States as reliable and trustworthy. The same market journal and its quotations were approved by this court in *Marden, Orth & Hastings Corp. v. Trans-Pacific Corp.*, 109 Wash. 296, 186 Pac. 884.

The market quotation from this journal for July 8 shows the price of cascara bark in New York to have been from 17 to 20 cents. The quotation of July 15, which was the next weekly issue of the journal, shows the price of such bark in New York at from 18 to 20 cents. There was also evidence by witnesses testifying to their knowledge of the market price of bark in New York showing that the price was not less than sixteen cents in the early part of July, 1918. Appellant contends, and so testified, that there was no market price for green or fresh bark anywhere in the United States except on the Pacific Coast where it originates. There is other evidence to the contrary, and it is unreasonable to suppose that, because there is a primary market price of raw bark at the place where it originates, there is no other or different price for the product at the

place where it is to be sold to the manufacturers and trade.

The trial court was therefore right in deciding that the measure of damages is the difference between the contract price of 12 cents a pound and the market price at the time of the breach; and that the eastern market should govern, since the bark was sold to be delivered in the east, although sold on terms f.o.b. place of shipment.

The trial court was in error, however, in holding that an average car of cascara bark would contain approximately 31,000 pounds, and basing damages thereon.

The allegation of respondent's amended complaint was that an average car contains 26,000 pounds. Appellant introduced a copy of the bill of lading of the car which was sold and delivered to respondent, which was shipped as containing 31,000 pounds, subject to correction, and which was corrected to show that it contained 29,400 pounds. The allegation as to the weight of an average car of cascara bark was denied by appellant, and there was no other proof as to what constituted an average car, except copies of bills of lading introduced.

Respondent itself introduced in evidence a number of copies of bills of lading for the purpose of showing that appellant, at and after the time of the breach of the contract alleged in this case, had shipped other cars of cascara bark, and in almost every instance had the Federal permits or shipping licenses accompany the bills of lading. Not one of these copies of bills of lading showed a car weighing 31,000 pounds. Shipping licenses required cars to be loaded to maximum capacity. Several of them approximated 25,000 pounds; several are under 24,000 pounds; one or two approximate 26,000 pounds, and only the one introduced in evidence and which was actually shipped to

respondent approximated 31,000 pounds. We are therefore of the opinion that, since there is no evidence contradicting the allegation that 26,000 pounds was the average weight of a car of cascara bark, respondent was not entitled to have its damages based on any greater poundage than 26,000 pounds.

The trial court found that the market value of fresh or green cascara bark in New York was 16 cents a pound, making a difference of four cents a pound between the market price and the contract price, and that the freight rate, which was 1¼ cents per pound should be deducted, making the net damages 2¾ cents per pound upon 31,000 pounds. The judgment should have been for 2¾ cents per pound upon not to exceed 26,000 pounds, which would have been $137.50 less than the court allowed, or $715.

The judgment will be modified to allow respondent to recover $715 and its costs in the court below.

Appellant, having recovered a more favorable judgment by appeal, will be allowed costs of appeal.

PARKER, C. J., MAIN, MACKINTOSH, and HOVEY, JJ., concur.