[No. 21960.   Department One.   August 12, 1930.]

CRON & DEHN, INCORPORATED, *Respondent*, v. CHELAN
PACKING COMPANY, *Appellant*.[1]

[1] Reported in 290 Pac. 999.

*Rummens & Griffin, Roberts, Skeel & Holman,* and *Sam R. Sumner,* for appellant.

*Eggerman & Rosling,* and *Adams & Driver,* for respondent.

MITCHELL, C. J.—This action was brought by Cron & Dehn, Inc., of Seattle, brokers and exporters, against Chelan Packing Company, a corporation, engaged in drying apples at Chelan, Washington, for damages for the breach of a written contract between the parties as follows:

"Hans Cron, Pres. and Treas.     Cable Address:
"Karl Dehn, Mgr. and Sec'y.          'Cronandehn'
          "CRON & DEHN, Inc.
          "Exporters & Importers
             "Seattle, U. S. A.
"No. 218                              "Date June 18, 1927
          "CONTRACT

"This contract is contingent upon wars, strikes, fire, accident, delays of carriers, or other delays unfavorable or beyond our control.

*Sellers:* Chelan Packing Company, Chelan, Washington.

*Buyers:* Cron & Dehn, Inc., Seattle, Washington.

*Article:* Extra choice dehydrated apple rings.

*Quantity:* Seller's total 1927 production estimated at 300 (three hundred) tons equal to 12,000 (twelve thousand) cases @ 50 lbs. net.

*Specification:* Goods packed in paper-lined boxes weighing 50 lbs. net—buyer's labels.

*Quality:* Extra choice Oregon-Washington apple rings 1927 pack. Quality to be equal or better in accordance with grading rules of Northwest Dried Fruit Association.

*Inspection:* At plant at time of shipment. Seller to furnish Federal or Northwest Dried Fruit Association inspection certificate which is final as to quality.

*Delivery:* To commence in September after which 'as packed.'

*Price:* 9c (nine cents) net per lb. f. o. b. car Chelan.

*Terms:* Cash against shipping documents consisting of bill of lading, inspection certificate and weigher's certificate.

*Remarks:* Sworn weigher's certificate to be furnished at time of shipment to be final as to weights.

"Buyers: Sellers:
Cron & Dehn, Inc. · Chelan Packing Company
By: Karl Dehn, Mgr. By: C. G. Shuman, Pres."

The contract, dated June 18, 1927, was not signed, it appears, until June 30, 1927.

Among other things, it was alleged in the complaint, as amended, that the defendant was advised, and well knew, that plaintiff was negotiating and entering into the contract to purchase extra choice dehydrated apple rings for re-sale to its customers in the United States and abroad, and further that defendant repudiated and breached the contract to the plaintiff's damage in the sum of twelve thousand dollars. The answer consisted of general denials.

The trial resulted in a verdict for the plaintiff in the sum of $4,215.94. Defendant has appealed from a judgment on the verdict.

There was substantial evidence in support of the allegations of the complaint that the contract was entered into, and that, on August 15, 1927, appellant, by means of a telegram to the respondent, refused to longer recognize the contract and to make any delivery thereunder. This suit was thereupon commenced August 17, 1927, and the trial of it had in January, 1929. It was stipulated at the trial that the fruit to be dried, covered by the contract, was to be delivered commencing about the month of October, 1927. The evidence further showed that the quantity of extra choice dehydrated apple rings actually packed by the appellant that season was 224,850 pounds, and there was substantial evidence that, on the date of the denial and repudiation of the contract by the appellant

and the date of the commencement of this action, the product for future delivery was worth two cents per pound more than the price mentioned in the contract.

Assignments of error one and five may be discussed together, viz: permitting respondent to show the market value, future delivery, of dehydrated apple rings at the time of the breach of the contract and commencement of this action; and denying appellant's motion for nonsuit or, in the alternative, its motion to direct a verdict in favor of the plaintiff for nominal damages only.

Substantially, the contention of the appellant on these assignments of error is that the measure of damages, if any, upon the breach or repudiation of such a contract prior to the date for performance, where the trial is had after such date, is the excess, if any, of the market value of the article at the date provided for delivery over the contract price, and that as there was no proof in this case of the market value of the article in October, 1927, the respondent was not entitled to recover more than nominal damages.

On the contrary, the respondent contends that, being engaged as a broker and exporter, as appellant was advised, it was entitled, from time to time, to the value of its contract measured by the market value of the product for future delivery, so that an anticipatory breach of the contract by the vendor made the vendor liable in damages at once to the extent of the excess, if any, of such present market value of the article for future delivery over the contract price. It may be observed that, at and prior to making the contract, appellant was a bona fide going concern. There was substantial testimony that, at the date of the breach of the contract, there was a recognized market for extra choice dehydrated apple rings, future fall delivery, in this state and along the Pacific coast gen-

erally, and that such market value was not less than 11c a pound. It was further shown in the testimony that, according to the general practice of brokers, the respondent engaged in re-selling such articles for future delivery to take place after the season's pack.

This case is similar in principle to the supposed one mentioned in Sedgwick on Damages (9th ed.), Vol. 2, § 636-e, for the delivery of oats on the first day of July, the contract being repudiated by the seller on the first day of April, and of which supposed case the author says at page 1253:

"The thing lost on the first of April, as has been seen, is a contract for delivery of July oats. While the value of a contract is ordinarily measured by the value of the performance of it, that is not true in every case. There are certain contracts for the future delivery of commodities which have a present market value, not directly dependent upon the ultimate value of performance. For instance, in the case just stated, if there were a produce exchange in which oats could be bought for future delivery, in other words, in which there was a market for contracts for the future delivery of oats, a contract for the delivery of oats on the first of July would, on the first of April, have a certain market value fixed by bargains on the floor of the produce exchange; and on general principles of the law of damages that market value would be taken as the value of the contract, and not the benefit ultimately to come from the performance of it. If then the defendant destroyed this contract on April first by a repudiation of it, the loss caused would be measured not by the value of the future delivery but by the market value of that contract on April first. It must be clearly noticed that this market value of the contract on April first is not the same thing as the difference between the contract price and the actual value of oats on April first. July oats may be quoted at a very different price from April oats; and the value of the contract would be the value of July oats on April first, not the value of April oats. In the case of an anticipatory breach of such a contract, there-

fore, the true measure of damages would seem to be the market quotation of goods of the sort for future delivery, and not the conjectural or even the actually proved profit arising from the contract in July.''

The case of *Samuels v. Drew*, 286 Fed. 278, involved a claim against receivers on an anticipatory breach of contract to purchase from the claimant certain quantities of cocoanut oil. Contracts entered into July and August, 1920, provided for deliveries in October, November and December, 1920. Receivers were appointed October 30, 1920. The trial court said:

''The real question is that of the measure of damages for the anticipatory breach. The receivers contend that the difference on October 30th between the contract and market price for delivery on the dates fixed by the contract governs. Claimants assert that the difference between the contract and market price on the dates fixed for delivery controls. The parties are agreed that the appointment of the receivers created anticipatory breach of contract, conditional, as receivers contend, on their failure to adopt the contracts, and, as claimants contend, on their renunciation, in each case, within a reasonable time.

''Ordinarily, in a personal action for breach of contract of sale, the measure of damages is as claimant contends; but even in such an action, if, on the anticipatory breach, there be a present market price for the goods to be delivered in accordance with the original contract, that price controls, not the market price for immediate delivery either at the time of breach or at the time fixed in the contract for delivery. A ready illustration is a wheat contract, made in December for May delivery, with anticipatory breach in January. The better rule of damages, because of the duty to mitigate damages when reasonably possible, is the difference between the contract price on the one hand, and the market price in January of May wheat, not the price of January cash wheat or of May cash wheat, on the other hand, and this even though action be brought or tried after May. Sedgwick, Damages (9th Ed.) Sec. 636-E.''

On appeal to the circuit court of appeals (292 Fed. 734), the judgment was affirmed, the court saying (p. 738):

"The law seeks to give to the injured person the value of the contract of which he has been deprived, no more and no less, and the question here is: What was that contract right worth on October 30, 1920? And the answer is that such sum is to be determined by taking the difference between the contract and market prices on the date of the breach for the same quality of goods, not for immediate delivery, but for delivery at the time and place specified in the contract. *Roehm v. Horst,* 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953. When it is established that on the date of the breach the claimant could have entered into similar contracts for similar deliveries, the only damages to which he is entitled are represented by the difference between the contract price and the price at which he could have secured such contracts. This rule does not apply solely to commodities which are subject to systematic dealing in futures, and which have market quotations respecting deliveries on specific future dates, as contended for by the appellant. In the Horst Case, cited, hops were held to be a standard commodity. Cocoanut oil is no less a standard. commodity. The rule is applicable, not only to commodities dealt in on the exchange where futures are bought and sold, but extend to all standard commodities having a market for future deliveries. The appellant substantially admits that contracts are frequently made for the sale of cocoanut oil for future delivery. This was the case here. The appellant admits it deals in the sale of cocoanut oil by contracting for future deliveries."

Counsel have cited a number of cases in which this subject matter is discussed in a general way, but we are of the opinion that the authorities just mentioned above are more nearly in point, and show that there is no substantial merit in these assignments.

It is assigned that the court erred in allowing

proof of the actual amount of the season's pack, the pack taking place after this action was commenced. The amount was shown by the testimony of appellant's president, and was certain at the date of the trial. Appellant is in no position to object, in our opinion, because the amount upon which the verdict is based is only slightly over one-third of the amount estimated in the contract. The quantity being known at the date of the trial, the plaintiff was properly confined to that amount, not in excess of the amount mentioned in the contract.

It is further assigned as error that the court should not have allowed in evidence over the objections of appellant three issues of a trade journal, dated respectively August 6, 7 and 13, 1927. They were the issues of the trade journal nearest the date of the alleged breach of the contract in suit, and were introduced as tending to show the market value of extra choice dehydrated apples, 1927 pack, as being 11c per pound. There was abundant testimony that the trade journal was and for years had been familiar to and recognized by the trade, and that it was considered reliable authority as to the market values of dehydrated products. Upon all the evidence on this subject, we think the exhibits fall within the rule announced in *Meyer Bros. Drug Co. v. Callison*, 120 Wash. 378, 207 Pac. 670, and were admissible in evidence. See also 10 R. C. L., § 367, p. 1167. Besides, prior to admitting these exhibits there was independent expert evidence, the competency of which was not objected to, of market values to the same effect as that contained in the trade journals admitted in evidence. This assignment in our opinion is without merit.

Appellant offered to prove that, at the time of making the contract, it was contemplated that the ap-

pellant would be able to procure raw apples at four dollars per ton, and that, as a matter of fact, the apples that were used cost from eight dollars to twenty dollars per ton. The rejection of this offered evidence is assigned as error. There is nothing in the contract that suggests the propriety of such proof, nor was there in the pleadings any question of the good faith of the appellant with reference to the total amount of the season's pack, although the quantity was greatly less than the estimate contained in the contract. The evidence thus tendered was immaterial, and there was no error in rejecting it.

The contract, as it appears upon its face, was signed by the appellant by its president, and it is contended that his authority to sign such a contract was not shown. However, without setting out the evidence, we are satisfied that there was sufficient substantial evidence to show that the president did have authority to sign the contract, at least entirely enough to submit that question to the jury, as was done under instructions which, in our opinion, were correct and proper, notwithstanding appellant's contentions to the contrary.

The amount of the verdict was not excessive, being well within the proof.

Affirmed.

MILLARD, PARKER, TOLMAN, and BEALS, JJ., concur.